IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FERNANDO PUJALT-LEON, | : | CIVIL ACTION NO. **3:CV-12-1749** |
| | : | |
| Petitioner | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| ERIC HOLDER, et al., | : | **FILED** |
| | : | **SCRANTON** |
| Respondents | : | |

JAN 1 1 2013

PER _____
DEPUTY CLERK

**REPORT AND RECOMMENDATION**

**I. Procedural Background.**

On September 4, 2012, the Petitioner, Fernando Pujalt-Leon, a detainee of the

Bureau of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner, proceeding *pro se*, names as

Respondents: Attorney General Eric Holder; Janet Napolitano, Secretary of the Department of

Homeland Security; John Morton, Assistant Secretary for ICE; Thomas L. Decker, District

Director of the Pennsylvania Field Office for Detention; and Mary Sabol, Warden of the York

County Prison ("YCP") (collectively, "Respondents")[1], where Petitioner is currently confined.[2]

(Doc. 1). Petitioner paid the filing fee. (Doc. 3).

---

[1] We note that Petitioner named one correct Respondent in his habeas petition, namely Mary Sabol, who is the Warden at YCP. *See* 28 U.S.C. §§ 2242 and 2243. The other four named Respondents are not proper Respondents. *Id.*

[2] As Petitioner recognizes (Doc. 1, pp. 3, 5), this Court has venue and jurisdiction with respect to his habeas petition challenging his continued physical custody by ICE at YCP. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) (finding that a petition pursuant to 28 U.S.C. § 2241 challenging an alien's present physical custody in the United States should be filed in the district where the petitioner is confined).

The Court issued an Order to Show Cause on September 7, 2012, and directed Respondents to answer the habeas petition. (Doc. 4). After being granted two extensions of time, Respondents filed a Response to the Habeas Petition with attached Exhibits on October 18, 2012. (Doc. 17). Petitioner filed a Traverse on November 14, 2012. (Doc. 22).[3]

## II. Factual Background.

Petitioner is a citizen and native of Peru. (Docs. 1 and 17). He entered the United States on a B2, temporary visitor visa on January 29, 1997. (Doc. 1 at 5, Doc. 17, Ex. A, pp. 1-2). On April 6, 2000, Petitioner pled guilty to one count of threatening to kill and was sentenced to probation for one year. (Doc. 17, Ex. A, p. 3). On January 5, 2005, Petitioner was convicted of retail theft and sentenced to probation for two years. (Id.)

Prior to the above convictions which led to the removal proceedings against Petitioner, Petitioner was arrested seven additional times: 1) On September 18, 1998, Petitioner was arrested for threatening to kill, contempt of court order, and harassment, the case was sent to family court; 2) On October 1, 1998, Petitioner was arrested for stalking and contempt of court, the charges were merged with his charges from his April 6, 2000 conviction; 3) On March 11, 1999, Petitioner was arrested for providing false reports to law enforcement and hindering apprehension, the charges were dismissed; 4) On August 26, 1999, Petitioner was arrested for

---

[3]Petitioner filed a Petition for Writ of Mandamus on June 22, 2012, in this Court asking, in part, for essentially the same relief as he requested in his instant petition for writ of habeas corpus. See Civil No. 3:12-cv-01193, M.D. Pa. Petitioner also asked this Court to require ICE to rule on his Form I-130, alien relative visa application. On December 5, 2012, we issued an R&R and recommended that the Petitioner's Petition for a Writ of Mandamus be dismissed and that Respondents' Motion to Dismiss be granted. (Civil No. 3:12-cv-01193, Doc. 24).

simple assault and contempt, the charges were dismissed; 5) On September 9, 1999, Petitioner was arrested for contempt of court and harassment, the charges were sent to family court; 6) On July 7, 2006, Petitioner was arrested for harassment, the charges were dismissed; and 7) On December 29, 2010, Petitioner was arrested for violation of a protection from abuse order. (*Id.*, pp. 2-3).

Prior to his December 29, 2010 arrest, Petitioner was scheduled for a hearing before the immigration court in the YCP. (Doc. 17, Ex. B, ¶ 3). Prior to the hearing, on March 3, 2009, the immigration judge administratively closed the case by order because Petitioner was not in ICE custody. (*Id.*). After his December 29, 2010 arrest by the Philadelphia Police Department for violation of a protection from abuse order, Petitioner was placed into ICE custody. (*Id.*, ¶ 4). On December 30, 2010, ICE issued a Notice to Appear to Petitioner under sections 237(a)(1)(B) and 237(a)(2)(A)(ii) of the Immigration and Naturalization Act ("INA") as a person convicted of two crimes of moral turpitude not arising out of a single scheme of criminal misconduct and as a person remaining in the United States for a time longer than permitted. (Doc. 17, Ex. C, p. 3). On January 19, 2011, the Petitioner appeared before the immigration court and requested an adjournment to seek counsel and further requested a bond hearing. (Doc. 17, Ex. B, ¶ 5). The proceedings were adjourned by the immigration court until February 15, 2011. (*Id.*).

On January 20, 2011, the Office of the Chief Counsel ("OCC") filed additional charges of removability under section 237(a)(2)(E)(ii)[4] of the INA due to the protection from

---

[4]Section 237(a)(2)(E)(ii) provides "[a]ny alien who at any time after admission is enjoined under a protection order issued by a protection order issued by a court and whom the court determines has engaged in conduct that violates the portion of the protection order that

abuse charge. (*Id.*, ¶ 6). On February 14, 2011, Petitioner was transferred from ICE custody to

Philadelphia County on a writ. (*Id.*, ¶ 7). On February 15, 2011, Petitioner was scheduled for

an immigration hearing, however, Petitioner's counsel appeared at the wrong immigration

court. (*Id.*, ¶ 8). On February 17, 2011, the immigration court granted the OCC's motion to

administratively close the proceeding because Petitioner was not in ICE custody. (*Id.*, ¶ 9).

On March 24, 2011, Petitioner returned to ICE custody from the custody of

Philadelphia County. (*Id.*, ¶ 10). On April 19, 2011, upon motion to recalendar the case with

the immigration court, an immigration hearing date was set for May 24, 2011. (*Id.*). On May

24, 2011, a hearing was held before the immigration court. (*Id.*, ¶ 12). Petitioner admitted to

overstaying on his visa, but denied the allegation that he was convicted of committing two

separate crimes of moral turpitude. (*Id.*). Upon the request of Petitioner's counsel, the case

was adjourned until June 20, 2011. (*Id.*). On June 20, 2011, Petitioner's counsel argued that

Bergen County, NJ, Court dismissed the charge of threatening to kill relating to Petitioner's May

26, 2000 conviction which ICE was using for the removability charge. (*Id.*, ¶ 13). The

immigration court adjourned the proceedings until July 18, 2011. (*Id.*). ICE attempted to obtain

the records from Bergen County, NJ, Court and ICE was informed that the conviction was sealed

and that the judge would have to issue an order to unseal it in order for Bergen County to issue

a disposition of the case. (*Id.*, ¶ 14).

---

involves protection against credible threats of violence, repeated harassment or bodily injury to
the person or persons for whom the protection order was issued is deportable." INA §
237(a)(2)(E)(ii)

On July 18, 2011, Petitioner appeared before the immigration court and for the first time alleged that he had an approved Form I-130, alien relative visa application, filed by his brother in 1997. (*Id.*, ¶ 15). Petitioner argued that he was eligible to adjust his status to lawful permanent resident under 245(i) of the INA, however, he did not have proof of the alleged approved Form I-130. (*Id.*). The immigration court adjourned the proceedings for Petitioner to obtain proof of the approved I-130 and for ICE to obtain the Bergen County Court disposition for the immigration court. (*Id.*). On July 28, 2011, Petitioner's counsel requested an adjournment in the immigration court due to a scheduling conflict and the hearing was reset for September 20, 2011. (*Id.*, ¶ 16). The OCC did not receive proof of the approved I-130, therefore, the OCC made inquiry to the United States Citizenship and Immigration Services (CIS) to see if Petitioner or anyone filed an I-130 on his behalf. (*Id.*, ¶ 17). CIS did not have a record of the I-130 filing in Philadelphia or New York. (*Id.*, ¶ 18).

Upon motion by Petitioner's counsel, the immigration court reset the hearing date to October 25, 2011. (*Id.* ¶ 19). For an unknown reason, the immigration court again reset the hearing for November 29, 2011. (*Id.* ¶ 19). On November 18, 2011, Petitioner was released from ICE custody and turned over to custody of Montgomery County by writ. (*Id.* ¶ 21).

On November 22, 2011, upon motion of the OCC, the immigration court administratively closed Petitioner's case. (*Id.* ¶ 22). On December 14, 2011, Petitioner was returned to ICE custody from Montgomery County. (*Id.* ¶ 23). Upon motion of the OCC, the case was recalendared, however, it was again adjourned upon motion of Petitioner's counsel. (*Id.* ¶ 24).

On January 27, 2012, Petitioner was released from ICE custody and turned over to custody of Montgomery County by writ. (*Id*. ¶ 25). Upon motion of the OCC, the immigration court administratively closed the case. (*Id*. ¶ 26). On February 17, 2012, Petitioner was returned to ICE custody from Montgomery County. (*Id*. ¶ 27). The case was again recalendared upon motion of the OCC for March 5, 2012. (*Id*. ¶ 28). On March 5, 2012, the immigration judge ruled that Petitioner's conviction from Bergen County was for criminal attempt, not threatening to kill. (*Id*. ¶ 29). The immigration judge did not rule on the charges of removability against Petitioner. (*Id*.). Petitioner's cousin informed the immigration court that Petitioner was seeking adjustment of status or cancellation of removal. (*Id*.). The immigration court informed Petitioner's counsel that if the removability charges were sustained, Petitioner would not be eligible for cancellation of removal. (*Id*.). The counsel for Petitioner informed the immigration court that the criminal contempt charge from Bergen County against Petitioner was dismissed, but he did not have proof from the Bergen County Court. (*Id*.). The OCC informed the immigration court that the criminal contempt charge was dismissed from Philadelphia County, not Bergen County. (*Id*.). The immigration court adjourned the proceedings. (*Id*.).

Petitioner's counsel moved to withdraw from Petitioner's immigration case which was granted by the immigration court on March 13, 2012. (*Id*. ¶ 30). On March 9, 2012, Petitioner was released from ICE custody and turned over to custody of Montgomery County by writ. (*Id*. ¶ 31). Upon motion of the OCC, the immigration court administratively closed the case. (*Id*. ¶ 33). On March 30, 2012, Petitioner was returned to ICE custody from Montgomery

County. (*Id.* ¶ 33). The case was again recalendared in the immigration court upon motion of the OCC for April 16, 2012. (*Id.* ¶ 34).

On April 16, 2012, a hearing was held in the immigration court and Petitioner argued again that he had an approved Form I-130, but still did not have proof. (*Id.* ¶ 35). The OCC informed the immigration court that there was no record of an approved Form I-130, however there was a record of Petitioner's request to extend his visa filed in 1997 referencing the same service center number the Petitioner alleged was the service center number for the approved Form I-130. (*Id.*). On April 23, 2012, Petitioner filed a motion for a bond hearing in the immigration court. (*Id.* ¶ 36). On May 22, 2012, the Petitioner's request for parole from ICE's custody was denied by the immigration court. (*Id.* ¶ 38).

On June 12, 2012, Petitioner again appeared before the immigration court. (*Id.* ¶ 39). The immigration judge informed the parties that he had made his own inquiries and did not find an immigrant visa application filed on Petitioner's behalf. (*Id.*). The immigration judge inquired as to whether or not Petitioner had contact with his brother who allegedly filed the Form I-130 on his behalf. (*Id.*). Petitioner informed the immigration court that he wrote him a letter once. (*Id.*). The immigration judge adjourned the proceedings until July 10, 2012, in order to obtain a copy of the letter and to contact Petitioner's brother regarding the Form I-130. (*Id.*).

On July 10, 2012, the immigration judge informed the parties that his clerk contacted Petitioner's brother, Mario, and that he would be mailing proof of the alleged Form I-130. (*Id.* ¶ 40). The immigration judge adjourned the proceedings until August 14, 2012, to await the

7

proof of the Form I-130. (*Id.*). On August 14, 2012, Petitioner appeared before the immigration court and informed the court he was no longer pursuing adjustment of status and now wanted to apply for cancellation of removal. (*Id.* ¶ 41). The immigration judge adjourned the case to October 30, 2012, for a hearing on the merits of Petitioner's application for cancellation of removal. (*Id.*).

On September 4, 2012, Petitioner filed the instant Petition for a Writ of Habeas Corpus, challenging the applicability of § 236(c) and arguing that his continued detention by ICE at YCP has been unreasonably prolonged. (Doc. 1 at pp. 19-24). It does not appear from the record that Petitioner is subject to a final removal order as of this date, however, it is unclear as Petitioner was scheduled for a hearing on October 30, 2012 which was continued due to hurricane Sandy until January 16, 2013. (Doc. 22, p. 19). The next hearing appears to be a a merit hearing for cancellation of removal. (*Id.*).

### III. Claims of Habeas Petition.

In his Petition for a Writ of Habeas Corpus, Petitioner challenges ICE's determination that he is subject to mandatory detention under § 236(c) [8 U.S.C. § 1226(c)] without giving him a bond hearing. (Doc. 1). He challenges the authority of ICE to detain him while he is waiting for a final removal order and argues that he is not subject to mandatory detention because he was not placed in the custody of ICE "when released" from custody on a removable offense. (*Id.*, pp. 19-24). In essence, Petitioner argues because the Attorney General did not take Petitioner into custody when he was released from his criminal conviction for a removable offense, the last of which was in 2007, but allowed him to live in the community for years

before taking him into custody on December 30, 2010, he is not subject to mandatory detention without a bond hearing.

The Respondents argue that Petitioner is subject to mandatory detention under section 236(c) of the INA and that his detainment has not been unreasonably prolonged such that he would be entitled to habeas relief. (Doc. 17).

## IV. Discussion.

Thus, the issue is whether Petitioner is subject to mandatory detention provisions of 8 U.S.C. §1226(c) since ICE did not take him into custody until after the December 29, 2010 arrest by the Philadelphia Police Department for violation of a protection from abuse order. (Doc. 17, Ex. B, ¶ 4).

Initially, based on *Thomas v. Hogan*, 2008 WL 4793739, *3 (M.D. Pa.), we agree with Petitioner that this Court has jurisdiction to decide his habeas petition. In *Thomas*, the Court stated:

> It is well-established that district courts retain jurisdiction to consider an alien's habeas challenge to the statutory framework mandating his detention during removal proceedings. *See* 28 U.S.C. § 2241(c)(3) (noting that the writ of habeas corpus may extend to those held in custody in violation of the constitution "or laws or treaties of the United States"); *Demore v. Kim,* 538 U.S. 510, 517, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (finding that the INA does not bar habeas review of statutory or constitutional challenges to detention).

*Id. See also Madrane v. Hogan*, 2007 WL 3145956, * 12 - * 13 (M.D. Pa.), 520 F. Supp. 2d 654 (M.D. Pa. 2007); *Dang v. Lowe*, 2010 WL 2044632, 2010 WL 2044634 (M.D. Pa.).

In *Motto v. Sobol,* 2010 WL 146315, *3 (M.D. Pa.), the Court stated:

The apprehension and detention of aliens, pending removal decisions, are governed by the provisions by § 236 of the INA, 8 U.S.C. § 1226. Under § 1226(a), the Attorney General may issue a warrant for arrest and detention of an alien, pending a decision on whether the alien is to be removed from the United States. Although § 1226(a) permits discretion, (c)(1) states that "The Attorney General shall take into custody any alien who ... (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1).

See also, *Thomas v. Hogan*, 2008 WL 4793739, *1-*2; *Donaldson v. Donate*, 2009 WL 5179539, *2 (M.D. Pa.).

There is no dispute that Petitioner completed his probation based on a conviction which constitutes a removable offense and that ICE did not take him into custody immediately upon his release from probation in January 2007. Rather, ICE took Petitioner into custody on December 30, 2010. Nonetheless, ICE and the IJ have determined that Petitioner is subject to mandatory detention under INA § 236(c), 8 U.S.C. § 1226(c), without being eligible for an individualized bond hearing.

The clear language of § 236(c) states that an alien is subject to mandatory detention "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation .... ." *See Cox v. Monica*, 2007 WL 1804335, *1 (M.D. Pa.).

Petitioner states that since he was not immediately detained by ICE when he was first released from probation with respect to his sentence, and since ICE had waited for almost 4 years to detain him, the mandatory detention provision is no longer applicable to him. Petitioner states that under the plain meaning of §236(c), which is not ambiguous, he is not subject to the mandatory detention provision.

In *Saysana v. Gillen*, 590 F. 3d 7, 15 (1st Cir. 2009), the Court held that "the Government's effort to make §1226(c)(1) [§236(c)] 'ambiguous' is strained." The *Saysana* Court stated, "[w]e have concluded that the text of the statute [§236(c)] is clear. Consequently, because the "when released" language is unambiguous, there is nothing for the agency to interpret-no gap for it to fill-and there is no justification for resorting to agency interpretation to address an ambiguity." *Id.* at 16.

We again find the *Saysana* case persuasive, as we did in our Report and Recommendation ("R&R") issued in *Dang v. Lowe*, 2010 WL 2044632, and in our R&R issued in *Gonzalez v. Dept. of Homeland Sec.*, 2010 WL 2991396, both of which have now been essentially overruled by the District Court in *Cave*[5], and we again agree with *Saysana* that the text of §236(c) is clear and that the "when released" language is unambiguous we find that this

---

[5]As stated above, the District Court in *Cave, supra*, found that its decisions in *Dang* and *Gonzalez* were "in error" since it found that the *Matter of Rojas* case should be given deference. The *Cave* Court also recommended that Petitioner be granted a certificate of appealability and stated that decisions of other District Courts, including Court in the M.D. Pa., have disagreed as to whether the *Matter of Rojas* case should be given deference.

Court is not required, to give *Chevron* deference[6] to the BIA's interpretation of this section as stated in *Matter of Rojas.*

We find the *Cave* case to be distinguishable from the present case. As stated, in *Cave,* Petitioner claimed that he was not subject to mandatory detention provisions of 8 U.S.C. §1226(c) since ICE did not take him into custody until fifteen (15) months after he was released from state criminal custody.[7] In our case, Petitioner was not taken into custody by ICE until

---

[6]*See Chevron USA, Inc., Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984).

In *Sulayao v. Shanahan,* 2009 WL 3003188, *3-*4 (S.D. N.Y.), the Court stated:

> Under the two-step analysis set forth in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984), this Court must first determine whether section 1226(c) is ambiguous. If it is unambiguous, then Congress's clearly expressed intent is binding upon this Court and the BIA. *Id.* at 842-43. If, however, section 1226(c) is ambiguous, this Court must proceed to the second step of the *Chevron* analysis, and determine whether the BIA's interpretation is permissible. *Id.* at 843.
> "Statutory analysis begins with the plain meaning of a statute." *Natural Res. Def. Council, Inc. v. Muszynski,* 268 F.3d 91, 98 (2d Cir.2001). Words should be given their "ordinary sense." *Id.* "[T]he meaning of statutory language, plain or not, depends on context." *Bailey v. United States,* 516 U.S. 137, 145 (1995) (quotation marks omitted) (alteration in original). A statute is ambiguous if it is susceptible to two or more reasonable interpretations. *Muszynski,* 268 F.3d at 98. "when determining which reasonable meaning should prevail, the text should be placed in the context of the entire statutory structure." *Id.*

The *Sulayao* Court found that exhaustion was futile, that § 236(c) was ambiguous, and that the BIA's interpretation of § 236(c) as set forth in *Matter of Rojas* was permissible. We again disagree with the *Sulayao* Court and agree with the *Saysana* Court, and find that the language of § 236(c) is unambiguous.

[7]In *Gonzalez v. Dept. of Homeland Sec.,* 2010 WL 2991396, Petitioner Gonzalez was released one year before ICE took her into custody under § 236(c). In *Dang v. Lowe,* 1:CV-10-0446, 2010 WL 2044632 (M.D. Pa. May 7, 2010), Petitioner was released nine years and nine

almost four years after he completed his probation sentence. Additionally, Petitioner was detained for over two years when his merits hearing was scheduled before the IJ for January 16, 2013.

Respondents again submit in this case that *In re Rojas* is controlling and that Petitioner is properly detained under 8 U.S.C. § 1226(c). Further, Respondents also again argue that the BIA's decision is entitled to *Chevron* deference, as they aver that the text and structure of 8 U.S.C. § 1226(c) is ambiguous.

Petitioner has filed the present habeas petition to raise his argument as to why he believes he is not subject to the mandatory detention provision of § 236(c) of the INA, and why he should be granted an individualized bond hearing. Petitioner states that he was not timely detained by ICE when he was released from probation in January 2007, as required by § 236(c).

Thus, Petitioner claims that since ICE did not detain him for almost four years after his release from his probation sentence (*i.e.* December 30, 2010), he is no longer subject to the mandatory detention provisions of § 236(c) of the INA. Based on the long delay in this case and on the specific circumstances in this case, including the facts that Petitioner eligible to apply for Cancellation of Removal and that he will be detained for over 2 years at the time of his next hearing scheduled in his removal proceeding, we agree with Petitioner.

As relief in the present habeas case, Petitioner requests that this Court direct Respondents to immediately release Petitioner from custody or to afford him an individualized bond hearing before an Immigration Judge forthwith. Further, Petitioner requests that this Court

---

months before ICE took him into custody.

order Respondents to provide Petitioner with appointed counsel because he is an indigent individual and on any other basis justified by the law. (Doc. 1, p. 25).

We will now specifically address Petitioner's habeas claim and whether Petitioner should be afforded an individualized bond hearing.

### A. Exhaustion of BOP Administrative Remedies

Petitioner has not exhausted his administrative remedies with respect to his present habeas claim and his challenge to ICE's continued mandatory detention of his, and denial of his request for an individualized bond hearing by the IJ. Petitioner and Respondents do not address exhaustion of administrative of administrative remedies in their filings.

Generally, a writ of habeas corpus will not issue if the Petitioner has not exhausted his administrative remedies. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996) (It is well-settled that before a prisoner can bring a habeas petition under 28 U.S.C. § 2241, administrative remedies must be exhausted). If a prisoner does not exhaust available remedies, the petition should be dismissed. *Arias v. United States Parole Commission*, 648 F.2d 196, 199 (3d Cir. 1981); *Mayberry v. Pettiford*, 2003 WL 21635306 (5th Cir.); and *Lindsay v. Williamson*, Civil No. 07-808, M.D. Pa., (7-26-07 Memo, J. Caldwell), slip op. p. 4.

However, based on the Court's decision in *Cox v. Monica*, 2007 WL 1804335 (M.D. Pa.), we find that exhaustion is not required in our case since Petitioner is not appealing a final order of removal. Thus, we find that Petitioner is not required to exhaust his administrative remedies with respect to his request for an individualized bond hearing. We also find futility of exhaustion, since, the BIA has precedent against Petitioner and the BIA has clearly indicated

14

how it interprets §236(c). *See Matter of Rojas*, 23 I. & N. Dec. 117, 127 (B.I.A. 2001); *Gonzalez-Ramirez v. Napolitano*, 2012 WL 3133873, *2 (D.N.J. July 30, 2012). Therefore, we shall not recommend that Petitioner's habeas petition be dismissed for failure to exhaust his administrative remedies.

### B. Petitioner's Mandatory Detention under § 236(c) of the INA

Petitioner contends that he is not subject to mandatory detention under § 236(c) of the INA since he was not immediately taken into ICE custody when he completed probation in January 2007, and since ICE waited almost four years to detain him after he was released. Further, during the four years between Petitioner's probation and his detention, it does not appear that Petitioner attempted to flee or hide from authorities.

Petitioner has now been detained by ICE at YCP for almost two years and his Cancellation of Removal proceedings are still pending. Petitioner was found by the IJ to be eligible to submit an application for Cancellation of Removal. Petitioner had an IJ hearing scheduled on October 30, 2012, with respect to the merits of his Cancellation of Removal request. The hearing was continued due to hurricane Sandy and Petitioner's next merits hearing before the IJ is scheduled for January 16, 2013. (Doc. 22, p. 19).

The parties dispute whether § 236(c) is ambiguous or not. (Doc. 17 and Doc. 22). If it is found to be ambiguous, then deference is due to the BIA's interpretation of §236(c) as stated *In re Rojas* if it is reasonable based on the *Chevron* standard.

Based on *Bromfield v. Clark,* 2007 WL 527511 (W.D. Wash. Feb. 14, 2007) and *Gonzalez-Ramirez v. Napolitano*, 2012 WL 3133873 (D.N.J. July 30, 2012), as well as *Oscar v.*

15

*Gillen*, 595 F. Supp. 2d 166, 169 (D. Mass. 2009)(Court found that government's interpretation of §236(c) as applying "any time after the alien is released," "perverts the plain language of the statute"), we find that Petitioner is entitled to an individual bond hearing since he was not taken into ICE custody immediately after his release from custody or within a reasonable time after his release from probation. *See also Ortiz v. Holder*, 2012 WL 893154 (D. Utah March 14, 2012)(the Court found that the intent of Congress was unambiguous and that "Congress intended for mandatory detention to apply only to noncitizens who are detained *at the time of their release* from criminal custody for an enumerated offense under 8 U.S.C. §1226(c).")(emphasis original); *Monestime v. Reilly*, 704 F.Supp.2d 453, 458 (S.D. N.Y. 2010)(Court held that even if Petitioner was detained under a mandatory detention statute, §1226(c), since he was detained by ICE during his removal proceedings for more than 8 months, he was entitled to an individualized bond hearing under *Demore v. Kim*, 538 U.S. 510 (2003); *Khodr v. Adduci*, 697 F.Supp.2d 774 (E.D. Mich. 2010)(Court held that the phrase "when the alien is released" "clearly and unambiguously requires that the Attorney General take the alien into custody immediately upon the alien's release from criminal custody."); *Scarlett v. DHS*, 632 F.Supp.2d 214 (W.D. N.Y. 2009)(Court held that since alien was taken into ICE custody about 18 months after he was released form incarceration, he was entitled to a bond hearing); *Gonzalez-Ramirez v. Napolitano*, 2012 WL 3133873 (D.N.J. July 30, 2012)(the Court found that the plain language of §1226(c) was unambiguous and that "Congress clearly intended to give the Attorney General the authority of mandatory detention under §1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody ...

."). *But see Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012)("[A]lthough §1226(c) may arguably be susceptible to more than one interpretation, the BIA's interpretation of the statute in *In re Rojas*, 23 I. & N. Dec. 117 (BIA 2001), is a permissible, and more plausible, construction. We therefore give deference to the BI's interpretation ... . ").

The Third Circuit Court has not yet ruled on the issue presented in this case. *See Gonzalez-Ramirez v. Napolitano*, 2012 WL 3133873, *4. The Court in *Gonzalez-Ramirez v. Napolitano*, 2012 WL 3133873, *4, n. 7, recently noted that this issue was presently pending before the Third Circuit in *Sylvain v. Holder*, C.A. No. 11-3357 and in *Desrosiers v. Hendricks*, C.A. No. 12-1053. Nonetheless, the Court in *Gonzalez-Ramirez v. Napolitano*, 2012 WL 3133873 (D.N.J. July 30, 2012), very recently found that the plain language of §1226(c) was unambiguous and that mandatory detention under §1226(c)(1) was only permitted if ICE took the alien into custody immediately when the alien was released from custody.

Based on the specific facts of Petitioner's case and the almost four year delay before ICE took him into custody, and based on the above cited cases, with which we concur, we find that the plain meaning of § 236(c) does not apply to our Petitioner since he was undisputedly not taken into ICE custody when he was released from probation or within a reasonable time after his release from probation but, as stated, almost four years later. We agree with the very recent case of *Gonzalez-Ramirez v. Napolitano* and find that the plain language of §1226(c) is unambiguous. Thus, we find that Petitioner is not subject to mandatory detention under §1226(c), but rather Petitioner's pre-removal detention is governed by §1226(a), which allows the IJ to release Petitioner on bond.

In *Scarlett v. DHS*, 632 F. Supp. 2d at 219-220, the Court found *Oscar* as well as *Bromfield* and *Quezada-Bucio* as persuasive, and held that Petitioner Scarlett's detention was not authorized under §236(c) "because Petitioner was released from incarceration nearly eighteen months prior to his immigration detention. The *Scarlett* Court stated that, "[i]nstead, Petitioner's detention was authorized by 8 U.S.C. § 1226(a), which affords Petitioner the opportunity for an individualized bond hearing before an immigration judge." *Id.* (Citations omitted). In *Bromfield,* the Court stated:

> The phrase "when the alien is released" has been the subject of statutory interpretation in several previous cases, including two published decisions by this Court. *See Quezada-Bucio*, 317 F.Supp.2d at 1228; *Pastor-Camarena v. Smith*, 977 F.Supp. at 1415; *see also Boonkue v. Ridge*, 2004 WL 1146525 (D.Or. 2004); *Alikhani v. Fasano*, 70 F.Supp.2d 1124 (S.D. Cal. 1999); *Alwady v. Beebe*, 43 F.Supp.2d 1130 (D.Or. 1999); *Velasquez v. Reno*, 37 F.Supp.2d 663 (D.N.J. 1999); *Tenrreiro v. Ashcroft*, 2004 WL 1354277, *vacated and transferred*, 2004 WL 1588217 (D.Or.2004). In *Quezada-Bucio*, this Court determined that "the mandatory detention statute, INA § 236(c), does not apply to aliens who have been taken into immigration custody several months or several years after they have been released from state custody." *Quezada-Bucio*, 317 F.Supp.2d at 1231 (finding that petitioner who was released from state custody and was not taken into immigration custody until three years later was not subject to mandatory detention under INA § 236(c)); *see also Pastor-Camarena*, 977 F.Supp. at 1417 ( holding that the plain meaning of the statute indicates that INA § 236(c) applies to aliens immediately after release from custody, and not to aliens released many years earlier). As the Court previously explained, 'the clear language of the statute indicates that the mandatory detention of aliens 'when' they are released requires that they be detained at the time of release. *Alikhani*, 70 F.Supp.2d

18

at 1130 . . . [If] Congress had intended for mandatory detention to apply to aliens at any time after they were released, it could easily have used the language *'after* the alien is released," 'regardless of when the alien is released,' or other words to that effect. Instead Congress chose to use the word 'when,' which connotes a much different meaning.

*Quezada-Bucio*, 317 F.Supp.2d at 1230. The Court finds, as in *Quezado-Bucio*, that Congress intended mandatory detention to apply only to those aliens taken into immigration custody immediately after their release from state custody. *Id.*

The Court also disagrees with respondents that the BIA's decision in *IN re Rojas*, 23 I & N Dec. 117 (BIA 2001), and its progeny should be accorded deference. The United States Supreme Court has held that the federal courts should defer to an agency decision only if the statute, "applying the normal 'tools of statutory construction,' [is] ambiguous." *INS v. St. Cyr*, 533 U.S. 289, 320 n. 45, 121 S.Ct. 2271, 150 L.Ed.2d 347 (201) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). As determined above, the plain language of Section 236(c) is not ambiguous. Accordingly, the Court agrees with petitioner that mandatory detention is not authorized in petitioner's case by Section 236(c) because he was not taken into immigration custody when he was released from state custody as required by the express language of the statute. *Quezada-Bucio*, 317 F.Supp.2d at 1231; *Pastor-Camarena*, 977 F.Supp. at 1417. The Court also agrees that petitioner is entitled to an individualized bond hearing pursuant to the general release terms of INA § 236(a).

2007 WL 527511, *4-*5.

Additionally, in a recent case, the Court held that a petitioner's Writ of Habeas Corpus be granted and the IJ was to provide the petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2). *Davis v. Hendricks*, 2012 WL 6005713 (D.N.J. November 30, 2012). The Court opined that because Davis was not taken into custody immediately by the Department of Homeland Security when he was released from criminal incarceration for an offense specified in § 1226(c)(1), he was not subject to detention under § 1226(c). *Id.* *11.

We find that Petitioner should be granted an individualized bond hearing since the plain meaning of the statute provides that § 236(c) only applies to aliens immediately when the alien is released from custody or within a reasonable time after release. We find that § 236(c) does not apply to aliens released from their criminal sentences four years before ICE detains them. As such, we will recommend that Petitioner be afforded an individualized bond hearing by the IJ.

While the above cases support our contention that Petitioner should be granted a bond hearing given the amount of time that has elapsed between his release from probation and his detention by ICE, the Court in *Hernandez v. Sabol,* 823 F.Supp.2d 266 (M.D. Pa. 2011), did not agree with our position. The *Hernandez* case involved a Petitioner who was a native of the Dominican Republic with permanent residency in the United States, who was convicted of a drug felony, and then ten years later was detained by ICE. Petitioner Hernandez had been detained for over seven months by ICE, and the Court declined to release him or to order an individualized bond hearing. In the *Hernandez* case, Chief Judge Kane opined that Hernandez did not argue that his removal proceedings had been unreasonably delayed and therefore that

20

the seven month period he had been detained was not an unreasonable period of time given the critical factors set forth by the Court in *Alli*. *Alli v. Decker*, 644 F.Supp.2d 535 (M.D. Pa.2009) (stating that detention continuing beyond the average time necessary for the completion of removal proceedings, while a significant factor, is not a per se limit on constitutionally permissible detention under § 1226(c)). The critical factors identified by the Court in *Alli* are:

> (1) whether the detention has continued beyond the average times necessary for completion of removal proceedings which were identified in *Demore*[8];
> (2) the probable extent of future removal proceedings;
> (3) the likelihood that removal proceedings will actually result in removal; and
> (4) the conduct of both the alien and the government during the removal proceedings.

*Hernandez* 823 F.Supp.2d at 273 (citing *Alli*, 644 F.Supp.2d at 543-45); *Denmore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708 (2003).

The Court in *Hernandez* further opined that, while it agreed that the clause in 8 U.S.C. § 1226(c) stating "when the alien is released" is ambiguous, it found that the BIA's interpretation of the statute was not arbitrary and capricious. Specifically the *Hernandez* Court stated:

> we must defer to the BIA's construction under *Chevron* for these reasons, and because this Court finds the BIA's decision in *Rojas* to be controlling, the challenge by Hernandez to the timeliness of when he was taken into custody fails, and he is properly subject detained pursuant to 8 U.S.C. § 1226(c).

---

[8]In *Demore*, the Court held that Congress could require aliens to be detained for a brief period of time that was necessary for their removal proceedings without providing individualized bond hearings. However, the Court considered this detention on average in the majority for one month and in the minority, for aliens choosing to appeal, for above five months. *Denmore*, 538 U.S. at 530.

*Hernandez*, 823 F.Supp.2d at 271.

Further, the Fourth Circuit has held that:

the BIA's interpretation of §1226(c) in *Rojas* was reasonable, and must be afforded deference. Moreover, the Government's supposed failure to comply with a statutory requirement--when the statute does not specify a consequence for such noncompliance--does not bestow a windfall upon criminal aliens.

*Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012).

The *Hosh* Court further stated:

§1226(c) does not specify any consequence for the Government's failure to detain a criminal alien immediately upon release, and therefore even if 'the duty is mandatory, the sanction for breach is not loss of all later power to act. Thus although the Government would retain the ability to detain criminal aliens after a bond hearing under the district court's reading of § 1226(c), Congress intended those aliens to be mandatorily detained *without* a bond hearing. The negligence of officers, agents, or other administrators, or any other natural circumstance or human error that would prevent federal authorities from complying with § 1226(c), cannot be allowed to thwart congressional intent and prejudice the very interests that Congress sought to vindicate.

*Hosh*, 680 F.3d at 382 (internal citations omitted).

Petitioner's removal proceedings commenced on December 30, 2010, when he was served with a Notice to Appear. (Doc. 17-2, Ex. C). Petitioner has been in removal proceedings for about two years. Petitioner's next merit hearing before the IJ is January 16, 2013. Previously,

as stated above, Petitioner was found eligible and applied for Cancellation of Removal. Thus, at Petitioner's next merit hearing before the IJ scheduled for January 16, 2013, it appears that the IJ will consider whether Petitioner is eligible for Cancellation of Removal. We find that Petitioner's removal proceedings have been unreasonably delayed and, therefore that the almost two year period he had been detained is an unreasonable period of time given the critical factors set forth by the Court in *Alli*.

Thus, as the Court found in *Monestime v. Reilly*, 704 F.Supp.2d 453, 458 (S.D. N.Y. 2010), even if Petitioner is detained under the mandatory detention statute, §1226(c), since he will be detained by ICE during his removal proceedings for more than 2 years, he is entitled to an individualized bond hearing under *Demore v. Kim*, 538 U.S. 510 (2003).

Based on the foregoing, we will recommend that Petitioner be given an individualized bond hearing before the IJ since we agree with Petitioner and his present argument that the plain meaning of the statute provides that §236(c) only applies to aliens detained immediately after release from custody or within a reasonable time after release from incarceration, and not to aliens released almost four years earlier. Therefore, we find that Petitioner's Habeas Petition should be granted to the extent that he should be afforded an individual bond hearing by the IJ. We find that Petitioner should be afforded an individualized bond hearing within ten (10) days.

## V. Recommendation.

Based upon the foregoing, it is respectfully recommended that the Petitioner's Petition for Writ of Habeas Corpus **(Doc. 1)** be granted to the extent that Petitioner be afforded an individualized bond hearing within ten (10) days.

**THOMAS M. BLEWITT**

**United States Magistrate Judge**

Dated: January   , 2013