# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FERNANDO PUJALT-LEON,

    Petitioner,

v.

ERIC HOLDER, *et al.*,

    Respondents.

CIVIL ACTION NO. 3:CV-12-1749

(JUDGE CAPUTO)

(MAGISTRATE JUDGE BLEWITT)

## **MEMORANDUM**

Presently before the Court are Magistrate Judge Blewitt's Report and Recommendation (Doc. 23) to Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and Respondents' Objections to the Report and Recommendation. (Doc. 24.) In the instant petition, Petitioner, a detainee of the Bureau of Immigration and Customs Enforcement ("ICE"), challenges ICE's determination that he is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). Petitioner contends that he is instead detained under § 1226(a) and therefore entitled to a bond hearing. According to Magistrate Judge Blewitt, § 1226(c) only applies to aliens detained immediately after release from custody or within a reasonable time after release. As such, Magistrate Judge Blewitt recommends Petitioner be afforded an individualized bond hearing before an immigration judge because Petitioner was not detained by immigration officials until four years after his release from state custody. Respondents filed timely objections to the Report and Recommendation. Because Petitioner's pre-removal-period detention is governed by § 1226(a) and not § 1226(c), the Report and Recommendation will be adopted and Petitioner will be afforded an individualized bond determination within ten days from the date of entry of the accompanying Order.

## **I. Background**

**A.**    **Relevant Factual Background**

    The facts giving rise to the instant § 2241 petition are set forth at length in Magistrate

Judge Blewitt's Report and Recommendation and will not be recounted in their entirety herein. For purposes of review of the Report and Recommendation, it is sufficient to note the following:

Petitioner, a citizen and native of Peru, entered the United States on a temporary visitor visa in January 1997. (Doc. 23, 2.) On April 6, 2000, Petitioner pled guilty to one count of threatening to kill and was sentenced to probation for one year. (*Id*.) On January 5, 2005, Petitioner was convicted of retail theft and sentenced to probation for two years. (*Id*.) Prior to the above convictions, Petitioner was arrested seven additional times. (*Id*.) Eventually, on December 29, 2010, Petitioner was arrested for violation of a protection from abuse order. (*Id*. at 3.)

After he was arrested on December 29, 2010, Petitioner was placed into ICE custody, almost four years after he was released from his criminal conviction for a removable offense. (*Id*.) The next day, on December 30, 2010, ICE issued a Notice to Appear to Petitioner under § 237(a)(1)(B) and § 237(a)(2)(A)(ii) of the Immigration and Naturalization Act. (*Id*.) Petitioner appeared before the immigration court on January 19, 2011. Petitioner requested an adjournment to seek counsel. (*Id*.)

Since then, Petitioner's removal proceedings have been put on hold, delayed, and/or continued for a number of reasons. (*Id*. at 3-8.) According to Respondents, Petitioner's removal proceedings, as of October 2012, were on hold for four months while he was in the custody of other authorities, continued by the Immigration Judge six times at Petitioner's request, and delayed multiple times based on Petitioner's failure to provide proof that he filed an I-130 as claimed or that one of his crimes had been vacated which was central to Petitioner's removability. (Doc. 17, 37-38.) Since October 2012, Respondents contend that the delays in the removal proceedings have been "at the behest of Leon, his conduct, or factors which the government had no control over." (Doc. 25, 6.) For example, Petitioner's

master calendar hearing scheduled for October 30, 2012 had to be postponed until January 16, 2013 due to Hurricane Sandy. (*Id*.) And, at the January 16, 2013 hearing, the Immigration Judge determined that Petitioner was not eligible for cancellation of removal, and the proceedings were adjourned to February 26, 2013 to ascertain the status of an additional request for relief raised by Petitioner. (*Id*.) Based on the Court's review of Petitioner's status on March 15, 2013, he appears to still be in ICE custody.

Based on the foregoing events, Petitioner filed the instant Petition for Writ of Habeas Corpus challenging the applicability of § 1226(c) to his detention. He also argues that his continued detention has been unreasonably prolonged.

**B.  The Report and Recommendation**

Magistrate Judge Blewitt recommends that the petition be granted to the extent that Petitioner be provided with an individualized bond hearing before an immigration judge. Following an extensive review of case law interpreting the "when the alien is released" language in § 1226(c), Magistrate Judge Blewitt concluded:

> We find that Petitioner should be granted an individualized bond hearing since the plain meaning of the statute provides that [§ 1226(c)] only applies to aliens immediately when the alien is released from custody or within a reasonable time after release. We find that [§ 1226(c)] does not apply to aliens released from their criminal sentences four years before ICE detains them. As such, we will recommend that Petitioner be afforded an individualized bond hearing by the IJ.

(Doc. 23, 20.) Magistrate Judge Blewitt also found Petitioner's removal proceedings to have been unreasonably delayed and that the almost two year detention period to be an unreasonable period of time given the critical factors set forth in *Alli v. Decker*, 644 F. Supp. 2d 535 (M.D. Pa. 2009). (*Id*. at 23.) Thus, Magistrate Judge Blewitt recommends that Petitioner be afforded an individualized bond hearing within ten days. (*Id*.)

**C.  Respondents' Objections to the Report and Recommendation**

Respondents assert two objections to the Report and Recommendation. First, Respondents contend that Petitioner is, in fact, subject to mandatory detention.

3

Specifically, Respondents argue that § 1226(c) is ambiguous, as the statute's "when . . . released" language "signals the beginning of ICE's continuing duty to detain criminal aliens rather than defines which aliens must be detained." (Doc. 25, 3.) Respondents also suggest that § 1226(c) is ambiguous because of "significant district court splits" as to its meaning. (*Id*.) Additionally, Respondents assert that the Board of Immigration Appeals' ("BIA") interpretation of § 1226(c) in *Matter of Rojas,* 23 I. & N. Dec. 117, 2001 WL 537957 (BIA 2001) warrants deference because it is reasonable. (*Id*.)[1]

Respondents' second objection to the Report and Recommendation relates to Magistrate Judge Blewitt's determination that the removal proceedings have been unreasonably delayed. (*Id*. at 4.) While Respondents acknowledge that Petitioner's

---

[1] *Matter of Rojas* involved the alien's appeal to the BIA of the Immigration Judge's rejection of the argument that Rojas was not subject to mandatory detention under § 1226(c)(1) because the government failed to apprehend him at the time of his release from incarceration on parole for an offense covered by § 1226(c), and instead waited two days before taking him into custody. *See Matter of Rojas*, 23 I. & N. Dec. 117. First, the BIA determined that the language in § 1226(c)(1) is not clear, but is susceptible to different readings. *Id*. at 120. The BIA stated that, although "[t]he statute does direct the Attorney General to take custody of aliens immediately upon their release from criminal confinement . . . Congress was not simply concerned with detaining and removing aliens coming directly out of criminal custody; it was concerned with detaining and removing all criminal aliens." *Id*. at 122. The BIA

> construe[d] the phrasing "an alien described in paragraph (1)," as including only those aliens described in subparagraphs (A) through (D) of section [1226(c)(1)], and as not including the "when released" clause. Our interpretation is derived from the natural meaning of the statutory language, from the object and design of the statute as a whole, and from the history of the mandatory detention provisions. It is reinforced by practical concerns that would otherwise arise.

*Matter of Rojas*, 23 I. & N. Dec. at 125. The BIA held that Rojas "is subject to mandatory detention pursuant to section [1226(c)], despite the fact that he was not taken into Service custody immediately upon his release from state custody." *Matter of Rojas*, 23 I. & N. Dec. at 127.

4

detention has continued beyond the average time necessary for the completion of removal proceedings, they argue that these delays are largely the product of Petitioner's own conduct. (*Id*. at 5.) Respondents also emphasize that the extent of future removal proceedings will be based solely on Petitioner's conduct and that it is more likely than not that the proceedings will actually result in removal. (*Id*. at 5-6.)

## II. Standard for Reviewing a Report and Recommendation

Where objections to the Magistrate Judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir.1989) (citing 28 U.S.C. § 636(b)(1)(c)). However, this only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984) (emphasis added). In conducting a *de novo review*, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Goney, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F.Supp. 375, 376–77 (M.D. Pa. 1998).

## III. Discussion

**A.    Jurisdiction**

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless

. . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989). Jurisdiction over the instant petition is proper because Petitioner is in custody in the Middle District of Pennsylvania and Petitioner alleges that his detention is not statutorily authorized and in violation of the Constitution.

**B.   Analysis**

The core issue with respect to the instant petition is whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). Section 1226(a) authorizes the Attorney General of the United States to issue a warrant for the arrest and detention of an alien pending a decision on whether the alien is to be removed from the United States. *See* 8 U.S.C. § 1226(a). Except as provided in § 1226(c), the Attorney General may release the alien on "bond of at least $1,500." 8 U.S.C. § 1226(a)(1)(A).

Conversely, § 1226(c) mandates detention of specified criminal aliens, without bond, during removal proceedings. *See* 8 U.S.C. § 1226(c). Section 1226(c) states:

(1) Custody

The Attorney General shall take into custody any alien who-

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(I) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

6

> *when the alien is released*, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

*Id* (emphasis added).

Petitioner contends that § 1226(c) is inapplicable to him because ICE failed to detain him immediately upon his release from custody, but instead waited almost four years to detain him following his release. In contrast, Respondents argue that the "when the alien is released" language is ambiguous, rendering Petitioner subject to mandatory detention.

Respondents' argument is unconvincing. First, the clear, unambiguous language of § 1226(c) demonstrates that "Congress intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien immediately when the alien is released from custody resulting from one of the offenses enumerated in § 1226(c)." *Gonzalez-Ramirez v. Napolitano*, No. 12-2978, 2012 WL 3133873, at *5 (D. N.J. July 30, 2012). If the phrase "when the alien is released" authorizes the Attorney General, as suggested by Respondents, to take into custody any aliens who have committed an enumerated offense under § 1226(c)(1)(A)-(D) "without regard to the time of that alien's release from custody, then the phrase 'when the alien is released' becomes meaningless surplusage." *Valdez v. Terry*, 874 F. Supp. 2d 1262, 1265 (D. N.M. 2012). Thus:

> a natural reading of the statutory provision from top to bottom makes clear that the congressional requirement of mandatory detention is addressed to the

7

> situation of an alien who is released from custody for one of the enumerated offenses. The statutory language embodies the judgment of Congress that such an individual should not be returned to the community pending disposition of his removal proceedings. Both the language and the structure of the statutory provision state this mandate in a clear and straightforward manner.

*Saysana v. Gillen*, 590 F.3d 7, 13 (1st Cir. 2009); *but see Hosh v. Lucero*, 680 F.3d 375, 380 (4th Cir. 2012) (finding the statutory language ambiguous, affording the BIA's reasonable interpretation of § 1226(c) deference, and holding that an alien is subject to mandatory detention under § 1226(c) even if not detained immediately upon release from state custody).

Second, while the Third Circuit has yet to resolve the meaning of "when the alien is released" in § 1226(c)(1),[2] the majority of district courts within this Circuit that have addressed this issue have found the language to be unambiguous. These decisions hold that the government must act upon release, and when it does not, the detainee is held under § 1226(a), as opposed to § 1226(c), and the detainee is entitled to a bond hearing. *See, e.g., Hong v. Decker*, No. 13-317, 2013 WL 790010 (M.D. Pa. Mar. 4, 2013) (Mannion, J.); *Rodriguez v. Shanahan*, No. 12–6767, 2013 WL 396269 (D. N.J. Jan. 30, 2013) (Wolfson, J.); *Charles v. Shanahan*, No. 12-4160, 2012 WL 4794313 *6 (D. N.J. Oct. 9, 2012) (Pisano, J.); *Kporlor v. Hendricks*, No. 12-2755, 2012 WL 4900918 *6 (D. N.J. Oct. 9, 2012) (Cavanaugh, J.); *Campbell v. Elwood*, No. 12-4726, 2012 WL 4508160 (D. N.J. Sept. 27, 2012) (Sheridan, J.); *Gonzalez-Ramirez v. Napolitano*, No. 12-2978, 2012 WL 3133873, at *4 (D. N.J. July 30, 2012) (Linares, J.); *but see Espinoza-Loor v. Holder*, No. 11-6993, 2012 WL 2951642 (D. N.J. July 2, 2012) (Hochberg, J.); *Hernandez v. Sabol*, 823

---

[2] It appears that this precise issue is currently pending before the Third Circuit in *Sylvain v. Holder*, C.A. No. 11–3357, (3d Cir. docketed Aug. 31, 2011) (appeal by DHS), and *Desrosiers v. Hendricks*, C.A. No. 12–1053 (3d Cir. docketed Jan. 11, 2012) (appeal by petitioner).

8

F. Supp. 2d 266, 270-71 (M.D. Pa. 2011) (Kane, C.J.); *Diaz v. Muller*, No. 11-4029, 2011 WL 3422856 (D. N.J. Aug. 4, 2011) (Chesler, J.). The disparity between the number of district courts in this Circuit holding that the language of § 1226(c) is unambiguous compared to those concluding "when the alien is released" to be ambiguous support the conclusion that §1226(c) is, in fact, unambiguous.

Finding the phrase "when the alien is released" to be unambiguous is also consistent with the majority of federal courts that have addressed this issue. Indeed, the "vast majority of federal courts that have addressed this issue" have concluded that § 1226(c) does not apply to a detainee that "was not taken into immigration custody when released by state officials from his [or her] qualifying offenses." *See Ortiz v. Holder*, No. 11-1146, 2012 WL 893154, at *3 (D. Utah Mar. 14, 2012). Instead, the detainee is held under § 1226(a) and entitled to an individualized bond hearing with an immigration judge. *See id.* at *3 n.8 (collecting cases); *see also Kporlor*, 2012 WL 4900918, at *6 (collecting cases).

As a result, the Court will not defer to the BIA's interpretation of § 1226(c). Here, because "the plain meaning of the statute is unambiguous, then the statutory text controls, and no deference to the agency's interpretation of that text is called for." *Cheng v. Attorney General*, 623 F.3d 175, 186 (3d Cir. 2010) (citing *Chang v. I.N.S.*, 119 F.3d 1055, 1060 (3d Cir. 1997)).

In sum, mandatory detention is not authorized in Petitioner's case because he was not taken into immigration custody until four years after his release from custody by state officials for his removable offense. Thus, § 1226(c) does not apply to Petitioner. Instead, Petitioner's pre-removal-period detention is governed by § 1226(a), which entitles him to an individualized bond hearing before an immigration judge.[3]

---

[3] "Detention under § 1226(a) is discretionary and *requires* an individualized bond hearing." *Beckford v. Aviles*, No. 10-2035, 2011 WL 3515933, at *5 (D. N.J. Aug.

## IV. Conclusion

For the above stated reasons, the petition will be granted to the extent that Petitioner will be afforded an individualized bond hearing within ten (10) days from the date of entry of the accompanying Order.

An appropriate order follows.

March 25, 2013  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge

---

9, 2011) (emphasis added); *see also Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) ("we hold that § 1226(a) must be construed as requiring the Attorney General to provide the alien with such a hearing."). It is therefore unnecessary to address whether Petitioner's removal proceedings have been unreasonably delayed. *See, e.g., Davis v. Hendricks*, No. 12-6478, 2012 WL 6005713 (D. N.J. Nov. 30, 2012) (although the petitioner did not argue that his detention became prolonged under *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), he was nonetheless entitled to a bond hearing under § 1226(a) since he was not taken into custody when he was released from criminal incarceration for an enumerated offense). Nevertheless, the Court agrees with Magistrate Judge Blewitt's finding that the instant removal proceedings, which have now spanned over two years, have been unreasonably delayed.